IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE A. CHAMBERS and<br>LAURIE CHAMBERS,<br><br>           Plaintiffs,<br><br>v.<br><br>RAINES ELECTRIC, L.P.,<br><br>           Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:04-CV-1231-M |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment, filed July 1, 2005, and Plaintiffs' Motion for Leave to Supplement Response and Summary Judgment Evidence, filed September 28, 2005. The Court **DENIES** Plaintiffs' Motion for Leave to Supplement and **GRANTS** Defendant's Motion for Summary Judgment.

### I. BACKGROUND FACTS

Defendant Raines Electric, L.P. ("Raines") is an electrical contracting company that performs services for large commercial construction projects throughout the United States. Joe Chambers started working for Raines as an electrician in 1996. About a year later, Raines hired his wife, Laurie Chambers, as an electrician's helper. Mr. and Mrs. Chambers traveled across the country working on large commercial construction projects, such as Wal-Mart and Sam's Club stores. Mr. and Mrs. Chambers normally spent four to six months on each project, laying out the electrical system as part of a Raines electrical crew, consisting of six to ten employees, including a supervisor, electricians, and several electrician's helpers.

Mr. Chambers has a history of back injuries. In 1997, Mr. Chambers injured his back while working in Galveston. In 2000, Mr. Chambers allegedly injured his back while working in Plano, at

the Shops at Willow Bend Mall (the "Willow Bend project"). Although they did not file any reports about either injury, Mr. and Mrs. Chambers allege that Defendant had notice of the injury at the Willow Bend project. Specifically, Plaintiffs allege that Mr. Chambers told Chris Brockett, his supervisor, and Dan Shine, the President of Raines, about his on-the-job accident.

      Halfway through the Willow Bend project, Mr. Chambers took over the supervisor position for that project. Plaintiffs allege that Mr. Shine granted Mr. Chambers the position in part as an accommodation, due to his inability to perform much physical labor after his injury in 2000. After his appointment as supervisor, Mr. Chambers' attendance was sporadic, allegedly due to ongoing health problems. During that time, although Mr. Chambers retained the title of supervisor, Mrs. Chambers assumed his duties and conferred with Mr. Chambers by radio about day-to-day operations.

      Mr. Chambers returned to work at Raines when his crew moved to North Carolina for a new project. He worked 15-20 hours a week for the duration of the North Carolina project. Soon after, Mr. and Mrs. Chambers began work on the Golden Ring project in Maryland. Steve Beader supervised Mr. and Mrs. Chambers on that project.

      In March 2002, while Mr. and Mrs. Chambers were working in Maryland, Mr. Chambers began seeing Dr. Cohen, at Johns Hopkins Hospital, about his back problems. On March 26, 2002, Dr. Cohen performed a level three fusion on Mr. Chambers. Plaintiffs claim that Mrs. Chambers told Mr. Beader of the surgery, and that he authorized Mr. Chambers to take off work for approximately three weeks.

      Plaintiffs allege that Mr. Chambers suffered another on-the-job back injury on May 20, 2002.  As a result, Mr. Chambers was scheduled for surgery on June 14, 2002. Mrs. Chambers claims she told Mr. Beader about the surgery at some point before Defendant terminated Plaintiffs' employment.

Mr. Beader discharged Mr. and Mrs. Chambers on June 7, 2002. Defendant avers that Mr. Shine and Steve Lawhon, Raines' Human Resources/Safety Manager, decided to discharge Mr. and Mrs. Chambers due to concerns about their work performance, not to avoid providing insurance coverage. Defendant states that Plaintiffs were fired because (1) their supervision of the Willow Bend project was substandard; (2) they drove down the morale of their co-workers; and (3) they took advantage of their relationship with Mr. Beader on the Golden Ring project, taking an unacceptable amount of time off work. Plaintiffs respond that no one ever told Plaintiffs that their attendance record was a problem or that their job performance was substandard.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 302 (5th Cir. 1990). If the moving party meets this initial burden, then the burden shifts to the nonmovant, who must produce evidence establishing a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 321-22 (1986). This burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he bears the burden of proof at trial, summary judgment is mandatory. *Id.* at 322-24. The record must be considered in the light most favorable to the nonmovant. *Harrison v. Byrd*, 765 F.2d 501, 504 (5th Cir. 1985).

III. ANALYSIS

Plaintiffs contend that Defendants violated 29 U.S.C. § 1140, by discharging Plaintiffs to prevent them from exercising their rights to medical coverage.[1] Specifically, Plaintiffs aver that Defendant discharged them to avoid providing insurance coverage for Mr. Chambers' surgery scheduled for June 14, 2002.

"To establish a prima facie case of discrimination under ERISA, a plaintiff must establish that his employer fired him in retaliation for exercising an ERISA right or to prevent attainment of benefits to which he would have become entitled under an employee benefit plan." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 260 (5th Cir. 2001). Specifically, Plaintiff must show (1) an adverse employment action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled. *Bodine v. Employers Cas. Co.*, 352 F.3d 245, 250 (5th Cir. 2003). The plaintiff need not prove that the discriminatory reason was the only reason for discharge, but he must show that the loss of benefits was more than an incidental loss from his discharge. *Holtzclaw*, 255 F.3d at 260 (citing *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997)). A plaintiff must show specific intent to retaliate for the exercise of an ERISA right, or to prevent attainment of benefits he would become entitled to under the plan. *Stafford*, 123 F.3d at 295. A plaintiff may prove these elements by using circumstantial evidence. *See Holtzclaw*, 255 F.3d at 260. If a plaintiff proves a prima facie case, the court will continue to the next steps of the

---

[1] 29 U.S.C. § 1140 reads in pertinent part as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [or ERISA], . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or ERISA].

*McDonnell Douglas* burden-shifting framework. *See Flood v. Shell Servs. Int'l*, 287 F. Supp. 2d 732, 738 n.6 (S.D. Tex. 2003) (citing *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)).[2]

Plaintiffs have not carried their burden of proving a prima facie case. Plaintiffs have not produced evidence of specific intent to retaliate for either the exercise of an ERISA right or to prevent attainment of ERISA benefits. Plaintiffs unsuccessfully attempt to establish this element by alleging the following chain of events: (1) Mr. Chambers was scheduled for surgery on June 14, 2002, (2) Mr. Chambers told Mr. Beader about the upcoming surgery, and (3) Mr. Beader discharged Defendants shortly before noon on June 7, 2002, without explanation. There is uncontroverted evidence in the record, however, that Mr. Beader did not make the decision to terminate Plaintiffs. In his deposition, Mr. Chambers suggests that Mr. Lawhon instructed Mr. Beader to fire Plaintiffs. This comports with Mr. Shine's declaration, which states that Mr. Shine and Mr. Lawhon, together, decided to fire Plaintiffs.

Plaintiffs have not proffered sufficient evidence to create a genuine issue of material fact as to whether Mr. Shine or Mr. Lawhon, who made the termination decision, had specific intent to retaliate against Plaintiffs in connection with Mr. Chambers' claimed health benefits or to prevent attainment of ERISA benefits to Mr. Chambers. In fact, Plaintiffs have proffered no competent evidence that either Mr. Shine or Mr. Lawhon knew about Mr. Chambers' upcoming surgery. In Mr. Chambers' deposition, he claims only that Mr. Shine knew about his back problems generally, not about the fact that he was scheduled for surgery on or about June 14, 2002. Instead, Defendant has produced evidence, through Mr. Lawhon's and Mr. Shine's declarations, that neither actually knew of Mr. Chambers' alleged injury or surgery when they decided to have Plaintiff terminated. (Def.

---

[2]Because the Court finds that Plaintiffs have not proven a prima facie case, the court need not consider whether *Rachid v. Jack in the Box, Inc.* affects the burden-shifting analysis in ERISA discrimination cases. *See* 376 F.3d 305 (5th Cir. 2004) (modifying the *McDonnell Douglas* burden-shifting framework for ADEA cases).

App. 160-61, 65). Plaintiffs have not offered any admissible evidence to challenge Lawhon's and Shine's declarations on this point.

Plaintiffs argue that temporal proximity, alone, should establish this element. The Court disagrees. Plaintiffs have not cited any cases where the court found specific intent based only on evidence of temporal proximity. Courts have, however, refused to find specific intent based only on evidence of temporal proximity. *See Bernal v. Randall Food & Drugs, Inc.*, 3:96-CV-3464-R, 1998 U.S. Dist. LEXIS 23178, *52-53 (N.D. Tex. Mar. 24, 1998) ("No evidence other than the temporal proximity between the plaintiff's final incursion of medical expenses and his discharge has been placed before the court linking the plaintiff's employment termination to the exercise of his right to benefits pursuant to the Plan. . . . To infer that [Defendant] intended to interfere with Plaintiff's entitlement to ERISA benefits . . . [would] be speculative."). Placed in the context of the rest of the evidence, especially Mr. Shine's and Mr. Lawhon's declarations, in this case, temporal proximity is insufficient to establish specific intent. *See Smith v. Gencorp, Inc.*, 971 F. Supp. 1071, 1076-77 (N.D. Miss. 1997) (considering statements of decisionmakers in holding that the plaintiff's allegations of suspicious timing did not create a fact issue as to specific intent).

Plaintiffs request that the Court consider Mr. Beader's declaration, despite the fact that Plaintiffs filed it two months after their Response, but the Court finds Plaintiffs' explanation for their tardiness unpersuasive. Plaintiffs cite *Barker v. Norman*, 651 F.2d 1107 (5th Cir. 1981), to support their Motion for Leave to Supplement Response and Summary Judgment Evidence. *Barker* is inapposite. In *Barker*, the pro se plaintiff had authored an affidavit that referenced facts sufficient to defeat summary judgment, but the affidavit was stricken as containing inadmissible hearsay. The Fifth Circuit noted that had the plaintiff introduced a properly verified affidavit from a third party with personal knowledge of those facts, that affidavit would have defeated summary judgment. *Id.* at 1128. The Fifth Circuit found that the district court abused its discretion by failing to afford the

plaintiff a meaningful opportunity to remedy these defects in his summary judgment proof. *Id.* at 1128-29. Here, Plaintiffs are represented by counsel; the *Barker* standard does not apply. *See id.* at 1129 n.26 ("[T]he precise nature of the opportunity given a *pro se* litigant to remedy defects in his summary judgment materials lies, of course, in the sound discretion of the district court.") (emphasis added). Additionally, unlike the situation in *Barker*, the declaration Plaintiffs tender contains facts absent from their original submission, not facts that were offered earlier in an improper form. The Court **DENIES** Plaintiffs' Motion for Leave to Supplement.

However, even if the Court considered it, Mr. Beader's declaration does not establish that Mr. Shine or Mr. Lawhon knew that Mr. Chambers was scheduled for back surgery. The Beader declaration states that "I believe that Steve Lawhan [sic] and Dan Shines [sic] was [sic] aware that Mr. Chambers was going to have surgery. I am not positive if I told them or if the insurance company had contacted them to verify employment." Statements based on information or belief are inappropriate summary judgment evidence. *See Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003) (citing Fed. R. Civ. P. 56(e)).

Finally, Plaintiffs attempt to establish specific intent using another statement in the Beader declaration. The declaration states that when Mr. Beader received the call instructing him to fire Plaintiffs, "there was some mention that Mr. Chambers had contacted an attorney was [sic] filing a lawsuit against Raines Electric relating to the injury or something along those lines." Plaintiffs admit, however, that "Mr. Baeder [sic] does not claim that he was told to fire plaintiffs in order to interfere or deny accrued ERISA benefits." (Pl. Mot. for Leave to Supp. Resp. and Summ. Judgment Evid. at 2). The allusion to a potential lawsuit does not evidence specific intent by Raines to retaliate for Plaintiffs' exercise of an ERISA right, or to prevent attainment of benefits Plaintiffs would become entitled to under an ERISA plan. Because there is no admissible evidence which creates a factual issue as to Defendant's specific intent to violate 29 U.S.C. § 1140, an element

which is necessary to support a prima facie case, Plaintiffs cannot prevail. *See Stafford*, 123 F.3d at 295.

Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**.

November 1, 2005.

_____
Barbara M. G. Lynn
UNITED STATES DISTRICT JUDGE